UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL TRABULSY,

    Plaintiff,

vs.                                     CASE NO.: 8:08-cv-02271-T-33AEP

POLK COMMUNITY COLLEGE[1]

    Defendant.
_____/

**ORDER**

**I. INTRODUCTION**

Plaintiff, MICHAEL TRABULSY, sues his former employer, POLK COMMUNITY COLLEGE ("the College"), for discrimination under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et. seq.*; the Florida Civil Rights Act (FCRA), Fla. Stat., Chapter 760; and the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et. seq*. The College seeks summary judgment on all three claims. After carefully considering the parties' submissions, the Court determines that the College is due summary judgment on all of Trabulsy's claims. Additionally this Order disposes of the College's Motion to Strike Portions of Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment.

---

[1] Polk Community College became Polk State College in July 2009. The proper corporate name is the District Board of Trustees of Polk State College.

## II. BACKGROUND[2]

For the 2004-05 academic year, Trabulsy was offered a full-time annual contract to teach Human Development, a required course for nursing, psychology, and teaching students. (Pl. 18:8-13; 19:25-20:25).[3] After completing three years of satisfactory service on an annual contract, instructors are eligible to be considered for a continuing contract or tenure. (Pl. Depo Ex. 6).[4] At the end of his first annual contract for the 2004-05 academic year, Trabulsy received a satisfactory evaluation. While this evaluation was overall rated as satisfactory, the Dean of the Arts & Sciences Department at that time noted that she would "like to see [Trabulsy] become more involved in the college community" as this was one factor evaluated by the College in granting a continuing contract. (Pl. Depo Ex. 18).

In 2005, Patricia Jones became the Dean of the Arts & Sciences Department and Trabulsy's immediate supervisor. (Pl. 39:6-14). As Trabulsy's supervisor, Dean Jones issued Trabulsy's performance evaluations. In her evaluation of Trabulsy's performance for the Spring 2006 semester, Dean Jones listed a number of deficiencies related to Trabulsy's goals and outlined her specific recommendations to cure those deficiencies. (Pl. Depo Ex. 7).

Trabulsy was extended a third annual contract for the 2006-07 academic year. (Pl. 41:15-20). On October 9, 2006, Jones met with Trabulsy to discuss her expectations for his annual goals

---

[2]For summary judgment purposes, the Court must accept Trabulsy's version of the facts as true and must also view the evidence in the light most favorable to Trabulsy, as the nonmoving party.

[3]Plaintiff's Deposition is attached to Defendant's Motion for Summary Judgment (Doc. # 20) as Exhibit A.

[4]Exhibits to Plaintiff's Deposition are attached to Defendant's Motion for Summary Judgment (Doc. # 20) as Appendix to Exhibit A.

in the areas of teaching, service to the College, and professional development.[5] (Pl. Depo Ex. 9; Pl. 56:1-8; 55:18- 25). On October 16, 2006, Trabulsy sent Jones an email containing his annual goals. Dean Jones reviewed the goals submitted by Trabulsy, found them to be unsatisfactory, and sent him an email on November 4, 2006, setting forth the specific areas where his goals did not meet her expectations. Dean Jones offered to meet with Trabulsy to assist him with revisions to his goals.

In November 2006, Trabulsy requested and received FMLA leave. (Pl. Depo Ex. 13). Trabulsy then took two weeks of leave from January 3-16, 2007, and during this time he received outpatient surgery.

While Dean Jones acknowledged that Trabulsy's student evaluations were strong, the College decided not to offer him tenure in March 2007 when Jones prepared his formal evaluation and rated Trabulsy's overall performance as not meeting standards. Jones shared her review with the Vice President for Academics and Student Services, who concurred with Trabulsy's evaluation. Dean Jones wrote a memo to the President of the College, Dr. Eileen Holden, advising of her recommendation that Trabulsy not be granted a continuing contract nor receive another annual contract. Dr. Holden concurred with the recommendation of Dean Jones.

Trabulsy claims that he suffered from cervical spondylosis, from degenerative disk disorder, and from episodic migraine headaches and that these debilitating headaches caused him pain and made him unable to move. Trabulsy further claims that his condition severely limited his ability to think, concentrate, and perform normal cognitive functions. Trabulsy visited the Gulf Coast Orthopedic Center in March 2007, and the notes show that he received treatment for cervical pain

---

[5]Faculty members on annual contract are expected to submit annual goals to their Dean. (Doc. # 20, Ex. C).

stemming from an injury he sustained in 1965, as well as migraines. The notes indicate that he underwent "conservative" treatment and that he was independent in his daily living. Post surgical notes indicate that the surgical site was healing without issue and that it was recommended that he do physical therapy and wear his collar.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if it appears through pleadings, depositions, admissions and affidavits that there is no "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The court's inquiry on a motion for summary judgment in an employment discrimination case "is whether an ordinary person could reasonably infer discrimination if the facts presented remained unrebutted." Jameson v. Arrow Co., 75 F.3d 1528, 1531 (11th Cir. 1996) (citing Alpin v. Sears Roebuck & Co., 940 F.2d 1497, 1500 (11th Cir. 1991)).

## IV. THE COLLEGE'S SUMMARY JUDGMENT MOTION

### a. Trabulsy's Disability Claims

Disability discrimination claims raised under the FCRA are analyzed under the same rubric as those under the ADA; therefore Trabulsy's claims under the FCRA and ADA will be analyzed together. Sicilia v. United Parcel Serv., Inc., 279 F. App'x 936, 938 (11th Cir. 2008). The ADA prohibits employers from discriminating in employment against otherwise qualified individuals with a disability. 42 U.S.C. § 12101, *et. seq.*

To establish a prima facie case of disability discrimination under the ADA, a plaintiff must show that (1) he has a disability; (2) he is a qualified individual; and (3) he was subjected to

4

unlawful discrimination because of his disability. Davis v. Florida Power & Light Co., 205 F.3d 1301, 1305 (11th Cir. 2000). While each party is required to carry their respective intermediate evidentiary burdens to avoid an unfavorable judgment as a matter of law, the plaintiff in an ADA discrimination suit bears the ultimate burden of establishing each of these elements. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981).

Trabulsy is unable make out a *prima facie* case under the ADA.[6] Under the ADA, a disability is defined as (1) a physical or mental impairment that substantially limits one or more major life activities; (2) a record of such impairment; or (3) being regarded as so impaired. 42 U.S.C. § 12102; Harris v. H&W Contracting Co., 102 F.3d 516, (11th Cir. 1996). Trabulsy alleges in his Complaint that he is disabled under all three tests for disability under the ADA. (Doc. 2, ¶ 32). While Trabulsy alleges that his cervical spondylosis and headaches substantially limited a major life activity, the evidence does not substantiate what essentially amounts to his self-serving testimony. The record evidence, including Trabulsy's medical records, state that he was able to perform all normal daily functions and was able to work at all times. The record evidence also shows that Trabulsy's medical issues were temporary in nature and under the ADA temporary conditions are not protected disabilities. 29 CFR §1630.2(j)(2).

---

[6] In 2008, Congress enacted changes to the ADA; however for purposes of the instant matter, the Court must apply the ADA as it was in effect at the time of the alleged discrimination. Fikes v. Wal-Mart, Inc., 322 F. App'x 882, 883 n.1 (11th Cir. 2009) (stating that absent Congressional expression to the contrary, there is a presumption against retroactive application of new legislation when it would "'impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed'" (quoting Landgraf v. USI Film Products, 511 U.S. 244 (1994))). However, for the reasons set forth herein, even if the 2008 version of the ADA applied, Trabulsy would still be unable to set forth a prima facie case of disability discrimination.

Trabulsy has presented no evidence which establishes that the College regarded him as disabled. To prevail on a perception theory of disability discrimination, a plaintiff must show: (1) that the perceived disability involves a major life activity; and (2) that the perceived disability is substantially limiting and significant. Rossbach v. City of Miami, 371 F.3d 1354, 1359-60 (11th Cir. 2004). Even assuming that the College had awareness of Trabulsy's neck problems and migraines, the mere fact that an employer knows a person has medical problems does not mean that the employee is regarded as having an impairment. Sutton v. Lader, 185 F.3d 1203, 1209 (11th Cir. 1999). Nor does Trabulsy bring forth any evidence that he has a record of such impairment, which is defined as having "a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k) (1997); Blundell v. Health Care Authority of City of Huntsville, 140 F. App'x 154, 156 (11th Cir. 2005).

While failure to establish that he is disabled is fatal to a claim for disability discrimination under the ADA, the Court notes that Trabulsy is likewise unable to satisfy the remaining prongs of a prima facie case of disability discrimination. Trabulsy is not a qualified individual with a disability, as a qualified individual with a disability must be able to, with or without reasonable accommodation, perform the essential functions of the job. See 29 CFR § 1630.2(m). It is undisputed that based upon Dean Jones' assessment, Trabulsy failed to meet the criteria in order to receive a continuing contract, which criteria were set forth in College policy and were clarified by Jones on a number of occasions. (Pl. Depo. Ex. 6, 7, 8, 9, 10). As Trabulsy did not perform the essential functions of an instructor, he was therefore not a qualified individual under the ADA. (Pl. Depo. Ex. 5). Finally, there is no evidence to suggest that Trabulsy experienced unlawful discrimination because of a disability.

However, even if Trabulsy was able to demonstrate a prima facie case, the College has articulated a legitimate, nondiscriminatory reason for not offering him tenure or another annual contract, and Trabulsy cannot demonstrate that the College's proffered reasons for terminating his employment and denying him tenure were mere pretext. It is undisputed that the College alerted Trabulsy to performance problems well before any perception of disability could have arisen, most notably in his Spring 2006 evaluation. It is not for the Court to second guess the College's reasons absent some evidence of pretext.

While Trabulsy essentially argues that the College's assessment of his performance was wrong and that he should have been given more time to complete his goals, Trabulsy's assessment of his own performance is irrelevant. An employer need not be correct in its assessment of the employee's performance; the employer need only have believed in good faith that a plaintiff's performance was unsatisfactory. Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991). An employer's good faith belief that an employee's performance is unsatisfactory constitutes a legitimate, nondiscriminatory reason for termination. Clark v. Coats & Clark, Inc. 990 F.2d 1217, 1228 (11th Cir. 1993).

The Court notes that the employer's discretion is particularly important regarding a College's employment decision related to tenure. Decisions related to tenure have, by their very nature, a subjective component, based upon factors such as compatibility with the institution. This is not simply an employment-at-will situation, where if the employee does not perform as expected, he can be disciplined or terminated in the future. After receiving tenure, a professor may not be terminated except under very limited circumstances. If Trabulsy, as an instructor who was striving for tenure, did not follow rules set by the College before he was granted tenure, the College could have a

legitimate concern whether he would have done so afterwards. In an academic setting, the College should be granted latitude in its tenure decision; it is not for the Court to sit as a "super-personnel department" and to second guess the College's decision. Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000)(citing Elrod, 939 F.2d at 1470).

As it also relates to a tenure decision, the instant case is similar to Kossow v. St. Thomas Univ., Inc., 42 F. Supp.2d 1312, 1316-17 (S.D. Fla. 1999). In Kossow, a law school stated that a law professor's lack of scholarly publication was a legitimate, nondiscriminatory reason for not offering him tenure. The plaintiff then attempted to show that the school's proffered reason was a pretext for discrimination on the basis of age by pointing to two law review articles that he had authored, which the tenure committee found lacked significant scholarly merit. The Court held that "the fact that the university did not give the Plaintiff's law review articles sufficient credit does not make it liable for age discrimination." Id. at 1317 (citing Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984) ("The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or no reason at all, as long as its action is not for discriminatory reasons.")).

Trabulsy alleges that the College's treatment of other instructors shows that its legitimate, nondiscriminatory reason for not offering him another annual contract or a continuing contract is a pretext for discrimination. However, the qualifications and performance of the individuals that Trabulsy identified as comparators are not sufficiently similar to be comparators. (Doc. # 20, Ex. J); Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004) ("The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer.") (citing Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1259 (11th Cir. 2001)).

8

Trabulsy alleges that instructors Greg Harris and Gordon Kettle were given more opportunities than he was given to meet the goals for continuing contract. (Pl. 106:24-107:24; 107:25-108:3). However, Trabulsy has no competent evidence to support such a claim. In support of the assertion that the College should have given him another year to meet criteria for continuing contract, Trabulsy points to Greg Harris as an individual who was given a fourth year to meet the criteria for a continuing contract.[7] (Pl. 115:24-116:9). However, Trabulsy himself conceded that he did not know whether Greg Harris met the requirements for tenure, such as college commitment. (Pl. 110:24-111:2). According to Dean Jones, Harris made efforts towards meeting the College's criteria for granting tenure and was an outstanding teacher who employed technology and collaborative learning in the classroom, served on a number of College committees, and attended a teaching conference. (Doc. # 20, Ex. J). In contrast, Trabulsy made no discernable efforts to meet the College's criteria in three years and ignored his supervisor's suggestions. (Doc. # 20, Ex. J).

Regarding Gordon Kettle, Trabulsy identified him only as someone who was given a "hard time" and then went on to receive tenure. Kettle is not a proper comparator because he met the College's criteria and received tenure after his third annual contact. (Pl. 113:21-114:3). Kettle served as economic consultant for the Workforce and Economic Development Division; completed a profile of the transportation and distribution industry for a grant for the Corporate College; and provided the President with economic data for various regions of the county. (Doc. # 20, Ex. J). He also served on hiring committees and an advisory committee for the Corporate College that reviewed the training development strategies of the College. (Doc. # 20, Ex. J). In the area of Professional

---

[7]Due to an administrative decision unrelated to his performance and an issue that arose related to his credentials, Harris, in fact, received a fifth annual contract. (Doc. # 20, Ex. J).

9

Development, Mr. Kettle served as an Economic Consultant for the Polk County Board of County Commissioners. (Doc. # 20, Ex. J). It is significant that Trabulsy himself admitted that after three years, he had not met the guidelines for continuing contract. (Pl. 114:25-115:11). As Trabulsy has presented no credible evidence that the College's legitimate, non-discriminatory reasons for not offering him a continuing or another annual contract were pretext, his disability discrimination claims therefore fail.

### b. Trabulsy's FMLA Claim

Under the FMLA an eligible employee is authorized to take twelve weeks of unpaid leave per year for a serious medical condition. 29 U.S.C. § 2601, *et. seq*. To state a claim under the FMLA, a plaintiff must show: (1) he availed himself of a protected right under the FMLA; (2) he suffered an adverse employment decision; and (3) there is a causal connection between the protected activity and the adverse employment decision. See Wascura v. City of S. Miami, 257 F. 3d 1238, 1248 (11th Cir. 2001)(citing Parris v. Miami Herald Publ'g Co., 216 F. 3d 1298, 1301 (11th Cir. 2000)(citing Earl v. Mervyns, Inc., 207 F. 3d 1361, 1367 (11th Cir. 2000))).

The FMLA provides for two types of claims: interference and retaliation claims. See Russell v. North Broward Hosp., 346 F.3d 1335, 1340 (11th Cir. 2003)(citing Strickland v. Water Works & Sewer Bd., 239 F.3d 1199, 1206 (11th Cir. 2001)); see 29 U.S.C. § 2615(a)(1)-(2); see also Wascura, 257 F.3d at 1247-48. Trabulsy asserts both interference and retaliation claims, both of which fail because he cannot demonstrate a causal connection between any protected activity and any adverse action. The Court considers it significant that Trabulsy was placed on notice of performance issues, particularly in his Spring 2006 evaluation, well before he availed himself of his rights under the FMLA. Despite the fact that he received an overall satisfactory rating, his supervisor, Dean Jones,

informed Trabulsy of issues with his performance that were to be corrected before he could expect to receive a continuing contract.

The temporal proximity between the time that Trabulsy requested FMLA and when the College decided not to either renew his annual contract or offer him a continuing contract is insufficient as a matter of law under Eleventh Circuit jurisprudence to infer intent to interfere or retaliate. See Wascura, 257 F. 3d at 1248 (period of three and a half months between employee's notice of availing herself of rights under FMLA and her termination was not sufficient to show causal connection); see also Higdon v. Jackson, 393 F.3d 1211, 1221 (11th Cir. 2004) (finding that, by itself, a three-month period between the protected activity and the adverse employment action was insufficiently close to establish causal relation). The fact that Trabulsy requested FMLA leave in November 2006, took this leave in January 2007, and that his contract was not renewed in March 2007 is insufficient to show a causal connection between these events as a matter of law.

Assuming that the temporal proximity could be considered sufficient, the timing of the College's decision regarding nonrenewal of Trabulsy's contract was prescribed by College policy and Florida law. College policy required that Dean Jones submit her recommendation regarding whether Trabulsy should receive a continuing contract by March 15th and further provided that Trabulsy be notified in writing of his status by April 1st. (Pl. Depo Ex. 6). The College was also required to notify Trabulsy that he would not receive another annual contract no later than April 1. (Pl. Depo Ex. 15; Pl. 137:14-138:11). There is simply no evidence to suggest that the College's decision not to offer Trabulsy a continuing contract or another annual contract was in any way related to his use of FMLA. For example, Trabulsy does not assert that he experienced any adverse comments or actions by Dean Jones or anyone else at the College.

Assuming that an employee successfully articulates a prima facie case, the burden shifts to the employer to "articulate a legitimate reason for the adverse action." Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1297 (11th Cir. 2006). If the employer does so, the employee must then show that the employer's proffered reasons were pretextual. Id. In the instant matter, even assuming *arguendo* that Trabulsy is able to articulate a prima facie case, the College had legitimate, nondiscriminatory reasons for not offering Trabulsy either a continuing contract or another annual contract, which are thoroughly discussed above. As Trabulsy is unable to provide any evidence that the College's reasons were pretextual, his FMLA claim must fail.

## V. CONCLUSION

Based on the foregoing, it is **ORDERED and ADJUDGED** as follows:

1. Defendant POLK COMMUNITY COLLEGE's Motion for Summary Judgment (Doc. # 20) is **GRANTED**. The Clerk is directed to enter judgment in favor of the Defendant and close this case.

2. Defendant's Motion to Strike Portions of Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Doc. # 38) is **DENIED AS MOOT**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 3rd day of May, 2010.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to All Counsel of Record